Thomas P. Riley, SBN 194706
LAW OFFICES OF THOMAS P. RILEY, P.C.
First Library Square
1114 Fremont Ave.
South Pasadena, CA 91030-3227

Tel: 626-799-9797
Fax: 626-799-9795
TPRLAW@att.net

Attorneys for Plaintiff
J & J Sports Productions, Inc.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> JOSEPH MARTIN COYNE and RAFAEL HERNANDEZ, individually and d/b/a DOUBLE PLAY; and 2 X PLAY LLC, an unknown business entity d/b/a DOUBLE PLAY, <br><br> Defendants. <br>-------------------------------------------------- <br> RAFAEL HERNANDEZ, et al., <br><br> Third-Party Plaintiffs, <br><br> vs. <br><br> COMCAST CABLE COMMUNICATIONS, INC., LLP, et al., <br><br> Third-Party Defendants. | Case No.: 3:10-cv-04206-CRB <br><br> PLAINTIFF'S DECLARATION IN SUPPORT OF PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

///

///

///

PLAINTIFF'S DECLARATION IN SUPPORT OF PLAINTIFF'S SUPPLEMENTAL
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENTCharles R. Breyer
CASE NO. 3:10-CV-04206-CRB

PAGE 1

**PLAINTIFF'S DECLARATION IN SUPPORT OF PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

STATE OF CALIFORNIA     )
                        ) ss:
COUNTY OF SANTA CLARA   )

I, JOSEPH M. GAGLIARDI, being duly sworn, deposes and states the following:

1. I am the President of Plaintiff, J & J SPORTS PRODUCTIONS, INC., and as such I am fully familiar with the facts, circumstances, and proceedings heretofore had herein.

2. I make this Declaration in support of Plaintiff's Motion for Partial Summary Judgment now before the Court.

3. As stated previously, my company J & J Sports Productions, Inc., is a closed-circuit distributor of sports and entertainment programming. My company purchased and retains the exclusive domestic commercial exhibition licensing rights to the *"Number One": Floyd Mayweather, Jr. v. Juan Manuel Marquez Championship Fight Program* (hereinafter alternatively referred to as "*Program*") which was broadcast on Saturday, September 19, 2009. My company thereafter marketed the sub-licensing (commercial exhibition) rights in the *Program* to my company's commercial customers (i.e., casinos, racetracks, bars, restaurants, and nightclubs), in the hospitality industry.

4. I understand from my legal counsel that the Court has requested clarification concerning the relationship between my company and Comcast (which provided the subject *Program* to the Defendants' place of business by way of a residential license fee paid them on a cable television programming account).

5. First, let me explain the relationship between my company and television programming providers (including Comcast). In the parlance of the industry, my company is known as a "closed-circuit distributor". This term dates back to the days when sporting events were exhibited to viewers at venues (i.e., theaters, armories, banquet halls, auditoriums) that were leased and the television broadcast signal of the event being exhibited at these venues was transmitted on a closed-circuit basis. Nowadays, however, our "distribution" of sporting events is limited solely to the actual licensing of commercial (and non-residential) locations. My company and other closed-circuit distributors must

PLAINTIFF'S DECLARATION IN SUPPORT OF PLAINTIFF'S SUPPLEMENTAL
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENTCharles R. Breyer
CASE NO. 3:10-CV-04206-CRB

PAGE 2

rely upon satellite and cable television programming providers (including Comcast) to distribute signal of the programming we license to our commercial customers. Because the programming we distribute is encrypted (and made available lawfully only to those that are licensed), in order for our commercial customers to view the programming they license from us, we must direct programming providers (including Comcast) servicing their establishment to provide unencrypted signal for the event to their commercial establishment subscribers. This is what is known as commercial activation requests.

6. In conducting our business as licensors, we regularly instruct programming providers to do commercial activation requests, and we maintain business relationships with various programming providers for precisely such purposes. In turn, our company is assessed fees for each commercial activation done by the programming providers, and we in turn pass those fees (known as a tech fees or activation fees) on through to our customers. For the Court's convenience, I have attached a copy of the commercial rate card concerning the September 19, 2009 *Program* to this Declaration which references the Two Hundred Dollar ($200.00) tech/activation fee our customers paid (in addition to the applicable commercial license fee required to view the *Program* lawfully).

7. Aside from commercial activations however, our company maintains no other relationship with programming providers (including Comcast). Whereas cable and satellite systems (including Comcast) provide television programming service to tens of millions of subscribers throughout the United States, (both residential subscribers and commercial subscribers), our company does not provide programming to anyone, rather we are a commercial licensor only, which means we secure licensing rights from the promoter/s of given events we wish to sub-license and then sell commercial sub-licenses to commercial locations in the hospitality industry throughout the country.

8. I also would like the Court to know that the programming providers do *not* act as a sales agent for us on any of our events (as the programming our company distributes is licensed exclusively by my company's internal sales team). The programming providers do *not* market our programming to their commercial subscribers, as this function is also overseen exclusively by our company internally. The programming providers are *not* a party to the transaction my company enters into to secure distribution rights from the promoter. The programming providers (including Comcast) are *not* joined to the legal claims brought forth by our company against the individuals and entities which exhibit our programming unlawfully. We do *not* share sales revenue figures (or

PLAINTIFF'S DECLARATION IN SUPPORT OF PLAINTIFF'S SUPPLEMENTAL
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT Charles R. Breyer
CASE NO. 3:10-CV-04206-CRB

any other financial data) with the programming providers. The programming providers are *not* involved with the enforcement campaign we maintain to identify commercial theft of the events we license. In short, we are *not* "partnered" in any way with Comcast (or any other programming providers) now or have we ever been, rather these companies are simply vendors of signal transmission services we utilize to service our commercial customers.

9. Similarly, the programming providers, (including Comcast) do not provide subscriber data to our company. Programming providers (including Comcast) do not share financial data with our company nor do they involve us in anything concerning the piracy enforcement programs they too maintain, nor is my company a party to any of the agreements or contracts they execute with their own subscribers. Much like the fact the programming providers are not a party to the closed-circuit license agreements we enter into with the promoters, my company is similarly not a party, privy, or in privity of contract to the agreements programming providers likewise enter into with promoters to distribute the very same events to their residential subscribers of television programming.

10. Essentially, my company and the programming providers operate in what can be best described as parallel universes and the *only* overlap involves commercial activations we request from them and pay them for. As such, our relationship with the programming providers is limited to a very technical aspect: namely, the delivery of signal to our customers that sublicense the programming we've obtained the rights to distribute commercially. Programming providers provide a vital component of the programming transaction essential to our closed-circuit business (much like the companies which print promotional posters, and materials we provide our customers as well), but as set forth above, our business relationship with them is very limited and entirely independent of their own agreements with their subscribers and the promoters themselves.

I declare under penalty of perjury pursuant to the laws of the State of California and the United States that the foregoing is true and correct. Executed this 5th day of August 2011.

Respectfully submitted,

Dated: 8/5/2011

*/s/ Joseph M. Gagliardi*
JOSEPH M. GAGLIARDI, President
J & J Sports Productions, Inc.

PLAINTIFF'S DECLARATION IN SUPPORT OF PLAINTIFF'S SUPPLEMENTAL
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT Charles R. Breyer
CASE NO. 3:10-CV-04206-CRB

# Exhibit 1

**CLOSED CIRCUIT EVENTS LLC.**
www.ggsportstv.com

**CALL TO ORDER: 1-888-258-7115**

*RATE CARD*

# "NUMBER ONE / NUMERO UNO"
## Saturday, Sept 19, 2009  9:00 PM ET / 6:00 PM PT
### From MGM GRAND GARDEN ARENA – Live on Pay-Per-View

## Floyd Mayweather Jr.
### VS.
## Juan Manuel Marquez

*Fights are subject too change***

A NON-REFUNDABLE MINIMUM GUARANTEE OF $1600.00 Plus $20.00 Per Person Above 100.

| MINIMUM SEATING | RATE |
|---|---|
| 0 – 100 | 2200.00 |
| 101 – 200 | 2800.00 |
| 201 – 300 | 3200.00 |
| 301 – 400 | 4200.00 |
| 401 – 500 | 6200.00 |

Casinos minimum guarantee of $6200.00 Flat Fee.
Minimum room capacity 300 People per casino.

- Directv and Dishnetwork Activation is included
- Commercial Public Viewing and Business Viewing pricing for this event is based on Fire Code Occupancy.

Closed Circuit Information

All commercial locations that have been licensed to carry this event must have a valid license agreement from the OFFICIAL CLOSED-CIRCUIT PROVIDER, G&G Closed Circuit Events Inc. There is NO OTHER LEGAL LICENSOR. Any location that has not been licensed by this provider will be considered a PIRATE and TREATED ACCORDINGLY.

For further information regarding multiple locations packages contact

Art Gallegos
G&G Closed Circuit Events LLC.
Vice President
1-888-258-7115

2380 South Bascom Avenue, Suite 200 • Campbell, CA 95008 • Tel: (408) 369-8022 • Fax: (408) 369-8096

**PROOF OF SERVICE (SERVICE BY MAIL)**

I declare that:

I am employed in the County of Los Angeles, California. I am over the age of eighteen years and not a party to the within cause; my business address is First Library Square, 1114 Fremont Avenue, South Pasadena, CA 91030. I am readily familiar with this law firm's practice for collection and processing of correspondence/documents for mail in the ordinary course of business.

On August 5, 2011, I served:

**PLAINTIFF'S DECLARATION IN SUPPORT OF PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

On all parties referenced by enclosing a true copy thereof in a sealed envelope with postage prepaid and following ordinary business practices, said envelope was duly mailed and addressed to:

**Duncan Barr, Esq.**
**O'CONNOR, COHN, DILLON & BARR**
**1750 Montgomery, Suite 1116**
**San Francisco, CA 94111**

**Trevor McCann, Esq.**
**LAW OFFICES OF TREVOR BRANDT MCCANN**
**2279 Foxhill Drive, Suite 200**
**Martinez, CA 94553**

**Jie-Ming Chou, Esq.**
**COOPER, WHITE & COOPER, LLP**
**201 California Street**
**San Francisco, CA 94111**

I declare under the penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct and that this declaration was executed August 5, 2011, at South Pasadena, CA.

Dated: August 5, 2011

*/s/ Maria Baird*
MARIA BAIRD